UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                          )
JOSEPH P. CARSON, P.E.,                     )
                                                          )
            Petitioner,                              )
                                                          )
      v.                                                 )            Civil Action No. 04-0315 (PLF)
                                                          )
U.S. OFFICE OF SPECIAL COUNSEL,   )
                                                          )
            Defendant.                              )
_____)

OPINION

            On February 26, 2004, petitioner filed a *pro se* petition for a writ of mandamus

seeking "to compel the Office of Special Counsel to do its statutory duty . . . to protect him from

prohibited personnel practices by the Department of Energy."  Petition for Writ of Mandamus

from the U.S. Office of Special Counsel ("Original Pet.") at 2.  After defendant filed a motion to

dismiss, petitioner filed an amended petition and numerous motions seeking leave to file

additional factual and legal allegations.  On October 27, 2004, the Court directed petitioner to file

a single, definitive amended petition in compliance with Rule 8(a) and Rule 10(b) of the Federal

Rules of Civil Procedure.

            On November 17, 2004, the petitioner filed an amended petition for a writ of

mandamus seeking an order directing the Office of Special Counsel ("OSC") to make several

determinations with regard to grievances petitioner had filed with OSC concerning prohibited

personnel actions that allegedly occurred at the Department of Energy ("DOE"), petitioner's

employer.  Defendant again moved to dismiss the petition.  Upon consideration of all the filings

of the parties, the Court dismisses the petition for writ of mandamus.

## I.  BACKGROUND

### A.  The Whistleblower Protection Act

Under the Whistleblower Protection Act of 1989 ("WPA"), 5 U.S.C. § 1201 et

seq., an agency is prohibited from taking any personnel action in reprisal for the disclosure of

information by an applicant that the applicant reasonably believes evidences violation of any law,

rule, or regulation by another agency employee.  See 5 U.S.C. §§ 1221(a), 2302(b)(8)(A)(i); see

also Stella v. Mineta, 284 F.3d 135, 142 (D.C. Cir. 2002); Weber v. United States, 209 F.3d 756,

757-58 (D.C. Cir. 2000).[1]  When an agency takes such an action, it is considered to be a

prohibited personnel practice ("PPP").[2]  An employee who believes he has been the victim of a

PPP must first complain to the OSC, which is required to investigate the complaint "to the extent

necessary to determine whether there are reasonable grounds to believe that a prohibited

personnel practice has occurred."  5 U.S.C. § 1214.  The initial investigation is conducted by

OSC's Complaints Examining Unit ("CEU").  See 5 C.F.R. § 1800.1(c)(4); Peter B. Broida, A

Guide to Merit Systems Protection Board Law & Practice, Ch. 13 § IV.B.1 (2004).  If

---

[1]      The definition of "personnel action" includes "an appointment; a promotion; . . . a detail, transfer, or reassignment; a reinstatement; a restoration; a reemployment; . . . a decision to order psychiatric testing or examination; and any other significant change in duties, responsibilities, or working conditions[.]"  See 5 U.S.C. § 2302(a)(2)(A).

[2]      Any action described in 5 U.S.C. § 2302(b) is considered a PPP.  See 5 U.S.C. § 2302(a).  PPPs include, among other things, various types of discrimination, see 5 U.S.C. § 2302(b)(1), decisions based on an employee's political activity, see 5 U.S.C. § 2302(b)(3), and willful obstruction with an employee's ability to compete for employment, see 5 U.S.C. § 2302(b)(4).

2

CEU determines that further investigation is needed, the complaint is referred to one of the agency's Investigation and Prosecution Divisions ("IPDs") for further investigation.  See id. (describing the organizational structure of OSC).  Based upon the IPD investigation, if OSC finds reasonable grounds to believe that a PPP has occurred, it may recommend to the agency involved that it take corrective action to remedy the apparent violation.  5 U.S.C. § 1214(b)(2)(B).  If the agency refuses or fails to take action, OSC may petition the Merit Systems Protection Board ("MSPB") to order the appropriate corrective action.  5 U.S.C. § 1214(b)(2)(C).

While an investigation is pending, OSC must provide written status updates to a complainant.  5 U.S.C. §§ 1214(a)(1)(C)(i) and (ii).  OSC must issue these updates within 90 days of the filing of a complaint, and at 60-day intervals thereafter, until the investigation is complete.  Id.  The updates must describe the current status of the complaint and any action taken during the preceding time period since the last update was issued.  Id.  If, after investigation, OSC finds no reasonable ground to believe that a PPP has occurred, it sends a written status report ("pre-determination letter") to the complainant informing him of the proposed findings and legal conclusions.  See 5 U.S.C. § 1214(a)(1)(D).  OSC must provide this pre-determination letter at least ten days before terminating an investigation.  Id.

While Section 1214 governs the procedures for OSC's investigations into whether a PPP has occurred, Section 1215 governs the procedures that follow after OSC has determined that a PPP has occurred and petitions the MSPB to take disciplinary action against an employee who has committed a PPP.  See 5 U.S.C. § 1215(a)(1).

In Section 1213, the Act sets out a separate set of procedures for investigating allegations of agency wrongdoing (known as whistleblower disclosures) under 5 U.S.C.

§ 2302(b)(8), which evidence a "(i) violation of any law, rule, or regulation, or (ii) gross mismanagement, a gross waste of funds, an abuse of authority or a substantial and specific danger to public health and safety." 5 U.S.C. § 2302 (b)(8)(A); see 5 U.S.C. § 1213(a). If OSC finds a "substantial likelihood" that the information constitutes a whistleblower disclosure, OSC transmits the information to the head of the involved agency. 5 U.S.C. § 1213(b). The agency must conduct an investigation and submit a written report of its findings to OSC. See id. If OSC does not find a substantial likelihood that the information constitutes a whistleblower disclosure, it must inform the submitting individual of "the reasons why the disclosure may not be further acted on[.]" 5 U.S.C. § 1213(g)(3)(A).

If OSC's investigation does not uncover support for the complaint, the employee still may seek corrective action from an alleged PPP before the MSPB. See 5 U.S.C. §§ 1214(a)(3), 1221. But "an employee alleging a [PPP] must give the OSC a chance to investigate before going to the MSPB." Weber v. United States, 209 F.3d at 759. Any decision of the MSPB is appealable to the United States Court of Appeals for the Federal Circuit. See 5 U.S.C. § 7703.

### B. Petitioner's Claims

Petitioner has filed numerous grievances with the OSC, of which five are relevant. In his petition for a writ of mandamus, petitioner alleges generally that the correspondence submitted by OSC to petitioner in OSC's processing of his five cases failed to satisfy OSC's statutory duty to provide him with information about its treatment of his complaints. Petitioner now requests that the Court order OSC to correct the alleged defects. Specifically, petitioner

seeks an order directing OSC to take the following actions with regard to his complaints: (1) in connection with OSC File No. MA-93-0151, petitioner requests that OSC inform him whether it had reasonable grounds for dismissing his complaint; (2) in connection with OSC File No. MA-03-1288, petitioner requests that OSC properly inform him of the status of its investigation; (3) in connection with OSC File Nos. MA-04-1018 and MA-04-1886, petitioner requests that OSC inform him of the legal conclusions in its pre-determination letters; and (4) in connection with DI-04-0693, petitioner requests that OSC inform him why it did not forward his disclosure letter to DOE.[3]

## II.  DISCUSSION

### A.  *Writ of Mandamus*

#### 1.  Jurisdiction Over OSC

Although the Mandamus Act provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the petitioner," the Act allows the Court to order a remedy only where subject matter jurisdiction already exists.  See 28 U.S.C. §§ 1361, 1651(a) (providing that the "Supreme Court and all courts established by an Act of Congress may issue all writs necessary or appropriate in aid of their respective

---

[3]      In his response to OSC's Motion to Dismiss, petitioner adds new allegations in connection with OSC File No. MA-04-1886 and MA-04-2444, as well as other claims regarding MA-03-1288.  See Rely [sic] to Government's Motion of December 17, 2004 ("Pet.'s Response") ¶¶ 7-12.  In light of the Court's Order of October 27, 2004, which directed petitioner "to file a single, definitive amended complaint concisely setting forth . . . his factual allegations and claims for relief," petitioner should have stated these claims in his amended petition.  Since he did not, and has not requested leave to present these new claims, the claims are not properly before the Court.

jurisdictions . . ."); see also Telecommunications Research and Action Center v. FCC, 750 F.2d

70, 76 (D.C. Cir. 1984) ("[I]t is firmly established that [Section] 1651 does not expand the

jurisdiction of a court.").  In addition, the Civil Service Recovery Act of 1978 ("CSRA"), Pub. L.

No. 94-454, 92 Stat. 1111 (codified as amended in scattered sections of Title 5 of the United

States Code), which governs non-constitutional claims brought by federal employees against the

United States government or its agencies, does not provide for subject matter jurisdiction in the

United States district courts for review of OSC decisions made pursuant to its authority under the

statute.  See Fornaro v. James, 416 F.3d 63, 67 (D.C. Cir. 2005) (CSRA is comprehensive and

exclusive remedial scheme); Carducci v. Regan, 714 F.2d 171, 174 (D.C. Cir. 1983) (CSRA is

"exhaustive remedial scheme" that clearly evidences congressional intent not to permit

alternative or preexisting remedies); Borrel v. United States Int'l Communication Agency, 682 F.

2d 981, 988 (D.C. Cir. 1982) ("[W]e are unable to conclude from the [CSRA] that Congress

intended to provide an independent judicial remedy to employees.").   Nor does the CSRA

provide for jurisdiction over appeals of decisions rendered by the MSPB in this Court; only the

United States Court of Appeals for the Federal Circuit may hear such petitions.  See 5 U.S.C. §§

1215(a)(4) and 1221(h)(2), incorporating 5 U.S.C. §7703(b)(1); see also United States v. Fausto,

484 U.S. 439, 449 (1988).

   The United States Court of Appeals for the District of Columbia Circuit

nevertheless has concluded that a United States District Court does have subject matter

jurisdiction to issue a writ of mandamus if it determines that OSC violated a non-discretionary

statutory duty to investigate an employee's allegations.  Weber v. United States, 209 F.3d at 756.

The court reasoned that because the Federal Circuit reviews only MSPB decisions and not OSC

actions or decisions, depriving the district courts of mandamus jurisdiction over claims that OSC

has failed to perform a statutory duty would foreclose all relief for such a failure.  Id. at 759.

2.  Standards for Relief in Mandamus

The remedy of mandamus "is a drastic one, to be invoked only in extraordinary

circumstances."  Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 34 (1980).  Only

"exceptional circumstances amounting to a judicial 'usurpation of power'" will justify issuance

of the writ.  Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 289 (1988)

(quoting Will v. United States, 389 U.S. 90, 95 (1967)); see also In re Leeds, 951 F.2d 1323,

1323 (D.C. Cir. 1991).  Mandamus is available only if: "(1) the plaintiff has a clear right to relief;

(2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to

plaintiff."  In re Medicare Reimbursement Litigation, 414 F.3d 7, 10 (D.C. Cir. 2005) (quoting

Power v. Barnhart, 292 F.3d 781, 784 (D.C. Cir. 2002)).  The party seeking mandamus "has the

burden of showing that 'its right to issuance of the writ is clear and indisputable.'"  Power v.

Barnhart, 292 F.3d at 784 (quoting Northern States Power Co. v. U.S. Dep't of Energy, 128 F.3d

754, 758 (D.C. Cir. 1997)).  Where the action petitioner seeks to compel is discretionary,

petitioner has no clear right to relief and mandamus therefore is not an appropriate remedy.  See,

e.g., Heckler v. Ringer, 466 U.S. 602, 616 (1984); Weber v. United States, 209 F.3d at 760

("[M]andamus is proper only when an agency has a clearly established duty to act.").

*B.  Petitioner's Claims*

1.  OSC File No. MA-93-0151

In 1992, petitioner filed complaint No. MA-93-0151 with the OSC, alleging that in retaliation for protected disclosures and grievances petitioner filed with the OSC, DOE committed a PPP against him under 5 U.S.C. §§ 2302(b)(8)-(9) when his DOE supervisor issued a memorandum counseling petitioner on his performance, issued a reprimand to petitioner, rated petitioner's performance unsatisfactory, and placed petitioner on a "performance improvement period." See Letter re: MA-93-0151.  OSC issued a pre-determination letter on October 26, 1993.  See id.  Petitioner now requests that the Court order OSC to inform him whether the agency had determined if it had reasonable grounds to believe that a PPP had been committed. See Amend. Pet. at ¶ 3.

Defendant argues that any claim based on OSC File No. MA-93-0151 is barred by the six-year statute of limitations provided in 28 U.S.C. § 2401.  See 28 U.S.C. § 2401 ("[E]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues.").  An action against an administrative agency accrues as soon as a plaintiff can institute and maintain a suit in court.  See Spannaus v. U.S. Dep't of Justice, 824 F.2d 52, 56 (D.C. Cir. 1987); see also Sendra Corp. v. Magaw, 111 F.3d 162, 165 (D.C. Cir. 1997) (right of action accrues on date of final agency action).  OSC notified petitioner of its closure of this file via a closure letter dated October 26, 1993.  See OSC Letter of October 26, 1993, Ex. 3 to Amend. Pet. ("Ex. 3 ").  Petitioner filed a request for reconsideration with the OSC and the agency reaffirmed its earlier decision on February 24, 1994.  See Amend Pet., Ex. 1.  Because petitioner could have filed his petition for mandamus as

early as February 24, 1994, the limiting period ended on February 24, 2000, and any suit filed

after that date is time-barred.  Petitioner filed his initial mandamus petition on February 26, 2004,

and thus, his petition, as it pertains to claim No. MA-93-0151, is untimely.

### 2.  OSC File No. MA-03-1288

On April 8, 2003, petitioner filed complaint No. MA-03-1288, requesting that

OSC pursue disciplinary action against certain DOE employees, pursuant to 5 U.S.C. § 1215, for

failure to comply with a MSPB order requiring DOE to implement a settlement agreement

resolving an earlier whistleblower case brought by petitioner.  See Complaint of Possible PPP or

Other Prohibited Activity filed by Joseph P. Carson (April 8, 2003) ("Original MA-03-1288

Filing"), Ex. 12 to Original Pet.  Petitioner now alleges that OSC violated 5 U.S.C.

§§ 1214(a)(1)(C)(i) and (ii) when it failed to include a list of "any action taken" in notices sent by

OSC after February 5, 2004, regarding claim No. MA-03-1288.  He requests that the Court order

OSC to provide him with a "comprehensive" list of such actions.  See Amend. Pet. ¶ 2(b).

Although OSC contends that petitioner originally was entitled to no status letters

because he filed his complaint under Section 1215, and investigations under Section 1215 do not

require status letters, see Motion to Dismiss Amended Petition for Writ of Mandamus ("Mot.

Dism.") at 17, OSC's correspondence with petitioner indicates that the agency itself treated the

complaint as having been filed under Section 1214.[4]  That petitioner's initial complaint was in

---

[4]        OSC did, in fact, acknowledge in 2003 that in relation to OSC File No. MA-03-1288, it was "authorized to investigate allegations of prohibited personnel practices and activities prohibited by civil service law, rule, or regulation, 5 U.S.C. § 1214(a)(1)(A)," and that "[w]e [OSC] have determined that further investigation is warranted concerning your allegations." Letter from Kasandra Robinson, CEU, OSC to Joseph Carson (April 30, 2003) ("First 2003 Letter re: MA-03-1288"), Ex. 14 to Original Pet.  Furthermore, OSC sent petitioner a letter on

fact treated as a Section 1214 complaint is not dispositive of petitioner's claim because in

February 2004 petitioner submitted another PPP complaint, based on the same set of facts as

those in the initial Section 1215 claim and OSC expressly agreed to evaluate it under Section

1214 as part of its investigation in MA-03-1288.  See First 2004 Letter re: MA-03-1288.

Thereafter, OSC complied with Section 1214 by sending petitioner periodic status letters that met

the time requirements of the statute.[5]  The status reports sent by OSC beginning in February 2004

informed petitioner that OSC had added a new allegation submitted by petitioner, see First 2004

Letter re: MA-03-1288; that OSC had requested that DOE submit the names of those involved in

the alleged PPP and list any actions DOE had undertaken to comply with the MSPB Order at

issue, see Second 2004 Letter re: MA-03-1288; that OSC contacted DOE officials and reviewed

documents submitted by petitioner, see Third 2004 Letter re: MA-03-1288; that OSC was in the

_____

June 30, 2003, regarding OSC File No. MA-03-1288 that stated: "In accordance with 5 U.S.C. § 1214(a)(1)(C)(ii), [OSC] is required to advise you of the status of your complaint within 90 days after our initial acknowledgment of its receipt, and every 60 days thereafter.  This letter serves as a 60-day status update."  Letter from Patrick Boulahy, OSC , to Joseph Carson (June 30, 2003) ("Second 2003 Letter re: MA-03-1288"), Ex. 15 to Original Pet.  OSC sent another 60-day notice on September 3, 2003, which again stated in explicit terms that it had undertaken an investigation under Section 1214.  See Letter from Patrick Boulahy, OSC , to Joseph Carson (September 3, 2003) ("Third 2003 Letter re: MA-03-1288"), Ex. 15 to Original Pet.

[5]      OSC sent status letters dated February 5, 2004, see First 2004 Letter re: MA-03-1288; April 29, 2004, see Letter of Patrick Boulahy, Attorney, OSC, IPD to Joseph Carson (April 29, 2004) ("Second 2004 Letter re: MA-03-1288"), Ex. 7 to Amend. Pet.; June 28, 2004, see Letter of Patrick Boulahy, Attorney, OSC, IPD  to Joseph Carson (June 28, 2004) ("Third 2004 Letter re: MA-03-1288"), Ex. 8 to Amend. Pet.; August 26, 2004, see Letter of Patrick Boulahy, Attorney, OSC, IPD  to Joseph Carson (August 26, 2004) ("Fourth 2004 Letter re: MA-03-1288"), Ex. 9 to Amend. Pet; and October 25, 2004, see Letter of Patrick Boulahy, Attorney, OSC, IPD  to Joseph Carson (October 25, 2004) ("Fifth 2004 Letter re: MA-03-1288"), Ex. 10 to Amend. Pet.  Section 1214(a)(1)(C)(i) requires the first status report to be provided 90 days after the filing of the PPP and Section 1214(a)(1)(C)(ii) requires letters at 60-day intervals thereafter. The first letter satisfies the 90-day requirement, (Ex. 6), and the remaining letters satisfy the 60-day requirement (Ex. 7–10).

process of determining what positions petitioner would have been available for during the time in

question, <u>see</u> Fourth 2004 Letter re: MA-03-1288; and that the OSC attorney was reviewing the

record to determine if DOE complied with the relevant MSPB order, <u>see</u> Fifth 2004 Letter re:

MA-03-1288.

These reports clearly informed petitioner of the "action taken" by the agency

during the required intervals.  OSC thus satisfied the statute and owes petitioner no further duty

under 5 U.S.C. § 1214(a)(1)(C).[6]  Petitioner therefore has not demonstrated a clear right to relief

necessary for the Court to grant a writ of mandamus.  The Court dismisses the claim with regard

to MA-03-1288.

### 3.  OSC File Nos. MA-04-1018 and MA-04-1886

In OSC File No. MA-04-1018, petitioner asserted that a DOE official violated 5

U.S.C. § 2302(b)(9) by failing to process grievances petitioner filed in 1999 and 2000.  <u>See</u> Pre-

Determination Letter re: MA-04-1018.  In OSC File No. MA-04-1886, petitioner alleged that

because he had voiced safety concerns and filed an appeal with the MSPB, agency officials

spread baseless rumors in the workplace that petitioner was a "threat to workplace violence."

<u>See</u> Pre-Determination Letter re: MA-04-1886.  OSC issued pre-determination letters informing

petitioner of its plans not to investigate the claims any further.  <u>See</u> Pre-Determination Letter re:

MA-04-1018; Pre-Determination Letter re: MA-04-1886.

---

[6]     Although petitioner reasserts in his response that the list of actions taken be
"comprehensive" or that respondent provide a declaration to either the complainant or the Court
stating that the list is comprehensive, <u>see</u> Pet.'s Response ¶ 5, the statute does not require this.

In his petition for mandamus, petitioner now alleges that OSC failed to comply with 5 U.S.C. § 1214(a)(1)(D) because it did not include the required "legal conclusions" in its pre-determination letters in MA-04-1018 and MA-04-1886.  See Amend. Pet. ¶ 3(d).  In its March 11, 2004, pre-determination letter to petitioner in MA-04-1018, OSC clearly stated the legal standard for determining whether a violation of 5 U.S.C. § 2302(b)(9) had occurred — which would constitute a PPP, OSC's legal conclusion that the statute had not been violated, and the basis for this conclusion.  See Pre-Determination Letter re: MA-04-1018.[7]  In its pre-determination letter for MA-04-1886, OSC articulated the standard for finding that DOE had committed a PPP under Section 2302(b)(8) and (9), described petitioner's allegations that DOE officials' spreading of baseless rumors about him and failing to implement a Board order constituted a significant change in his working conditions, and concluded that DOE's actions did not constitute a significant change in workplace conditions.  See Pre-Determination Letter re: MA-04-1886.[8]  Therefore, the OSC concluded, petitioner had not alleged a personnel action

---

[7]        The letter states, in relevant part, that:

failing to process a grievance in accordance with an agency's grievance procedure does not constitute a violation of this statute . . . .  Furthermore, your complaint does not suggest that . . . any . . . official took or failed to take a personnel action concerning you after you filed the grievance(s).  Absent a personnel action, we have no basis for further inquiry . . . for a possible violation of 5 U.S.C. 2302(b)(9).

Pre-Determination Letter re: MA-04-1018.

[8]        The letter stated, in relevant part:

The information you [petitioner] provided is insufficient to show a violation of these sections. . . . After conducting research on this issue, we are unable to find any case law in which the Board held that spreading rumors or defaming an employee constitutes a significant change in working conditions.  We were also unable to find case law

against him as required by Section 2302(b)(8) or (9).  See id.  Defendant argues that this

demonstrates that OSC informed petitioner of its legal conclusions and owes him no further

statutory duty.  See Mot. Dism. at 20.  The Court agrees.[9]

Petitioner further asserts, however, that in determining whether a significant

change in workplace conditions occurred, OSC improperly failed to consider the MSPB's

decision in Roach v. Dep't of the Army, 82 M.S.P.R. 464 (1999).  See Amend. Pet. ¶ 3(d).

Petitioner argues that Roach requires a broader reading of what constitutes a "significant change

in working conditions" and would include the conduct alleged in his complaint.  See id.  This

Court, however, only has jurisdiction to review whether OSC conducted an investigation; it

cannot pass on the merits of OSC's decision to terminate an investigation.  See, Borrel v. United

States Int'l Communications Agency, 682 F.2d at 988; Wren v. Merit Systems Protection Board,

681 F.2d 867, 875 & n.9 (D.C. Cir. 1982).  Petitioner challenges OSC's interpretation of

---

> which supports your argument that the failure to comply with a Board
> approved settlement agreement constitutes a significant change in
> working conditions.  Absent a personnel action, we would be unable
> to establish that a violation of 5 U.S.C. §§ 2302(b)(8) or (9) has
> occurred and thus are closing our file.

Pre-Determination Letter re: MA-04-1886.

[9]     The letter further addressed the alleged breach of the settlement agreement as
follows:

> [I]t appears that you did in fact go to the Board with a Petition for
> Enforcement in this matter.  We understand that the Board ruled that
> the agency was in "material breach" of this settlement.  Because this
> matter is most appropriately handled by the Board, and because the
> Board has already addressed this complaint, OSC will not pursue
> disciplinary action under 1215 for this particular allegation.

Pre-Determination Letter re: MA-04-1886.

Sections 2302(b)(8) and (9), but the Court has no authority to review OSC's substantive determination. Thus, petitioner has no clear right to the relief he seeks and, therefore, mandamus is not an appropriate remedy.

### 4. DI-04-0693

In 2004, petitioner filed No. DI-04-0693, in which he made two disclosures about agency wrongdoing: (1) that OSC violated 5 U.S.C. § 1214 in failing to report that reasonable grounds existed to believe that DOE had committed a PPP, where a complainant and the agency already had voluntarily resolved the PPP complaint; and (2) that due to gross mismanagement, DOE had created a substantial and specific danger to public health and safety as evidenced by the 80,000 claims filed by DOE employees and other eligible persons under the Energy Employees Occupational Illness and Compensation Program Act of 2000 ("EEOICPA"), 42 U.S.C. § 7384 *et seq*. See Letter re: DI-04-0693. OSC issued a pre-determination letter on August 23, 2004.

In his petition for mandamus, petitioner alleges that OSC violated 5 U.S.C. § 1213(g)(3) when it failed properly to inform him of its reasons for not forwarding to the appropriate agencies the two disclosures which, petitioner alleges, described a "specific and substantial danger to public health or safety." Amend. Pet. ¶ 3(c). Defendant argues that OSC did, in fact, report to petitioner why the disclosures would not be forwarded to the relevant agencies. See Mot. Dism. at 21. The CSRA requires that if OSC chooses not to transmit a disclosure to the agency involved, it must "inform the individual of . . . the reasons why the disclosure may not be further acted on under this chapter." 5 U.S.C. § 1213(g)(3)(B)(i).

14

On August 23, 2004 (after the commencement of this litigation), OSC informed petitioner by letter that it conducts a standard examination of the disclosed facts and only forwards disclosures which it finds establish a "substantial likelihood" of a violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, and abuse of authority, or a substantial and specific danger to public health or safety.  See Letter re: DI-04-0693.[10]  OSC also informed petitioner of its general policy not to transmit allegations of wrongdoing to the agency head where the allegation already is being litigated.  See id.  OSC stated that because its refusal to report petitioner's allegations of PPPs by DOE already was being litigated in this petition for mandamus, the agency need not forward the allegations of its own wrongdoing.  See id.  OSC concluded that forwarding the alleged failure to disclose to the head of OSC's Disclosure Unit would duplicate the formal adjudicatory process already underway in federal court.

With regard to petitioner's allegations against DOE, OSC informed petitioner that OSC's determination process includes consideration of whether the whistleblower has reliable first-hand information or whether the information is second-hand and speculative.  See Letter re DI-04-0693.  According to the OSC letter, petitioner provided only historical information about DOE since 1946 and provided no specific personal information in support of his claim of danger to public health and safety.  See id.  The letter also noted that the matters disclosed had been previously subject to public scrutiny and that where, as here, the allegations have been the subject of DOE inquiry and corrective action, OSC policy is not to transmit the disclosure.  See id.  OSC fully informed petitioner of the reasons why no further action would be taken in either of his

--------

[10]     The letter further informed petitioner that OSC does not have the authority to investigate disclosures and does not conduct its own investigations.  See Letter re: DI-04-0693.

DI-04-0693 disclosures.  Under 5 U.S.C. § 1213(g)(3), the agency owes no further duty to

petitioner and, therefore, mandamus is not an appropriate remedy.

## III.  CONCLUSION

Petitioner's claim regarding MA-93-0151 is barred by the statute of limitations.

In each of the other PPP and disclosure matters raised by petitioner, OSC already has performed

the statutory duties that petitioner requests the Court order OSC to perform.  The agency owes

petitioner no further duty and petitioner has not demonstrated a clear right to relief.  See Northern

States Power Co. v. U.S. Dep't of Energy, 128 F.3d at 758.  In addition, petitioner has not

demonstrated a clear right to relief that would enable the Court to order OSC to reconsider its

discretionary determination that there were no reasonable grounds to believe that a PPP had been

committed in MA-04-1018 and MA-04-1886.  Therefore, petitioner has not met his burden and

the Court must dismiss his petition for a writ of mandamus.

An Order consistent with this Opinion will issue this same day.


/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:   March 27, 2006

16